**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Brian Zoellick,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-23-08597-PCT-DLR<br><br>**ORDER** |

In January 2013, Claimant Scott Brian Zoellick applied for Social Security Disability Insurance and Supplemental Security Income benefits. (Administrative Record ("AR.") 115–16.) He was found disabled as of March 31, 2014. (AR. 21.) During an administrative review of Zoellick's disability status, Zoellick participated in a hearing with an Administrative Law Judge ("ALJ"). (AR. 86–114.) The ALJ issued a fully favorable decision on February 24, 2017, finding Zoellick continued to be disabled. (AR. 155–65.) This is the most recent favorable decision in Zoellick's case, also known as the Comparison Point Decision ("CPD").

On April 13, 2019, the Social Security Commission determined that Zoellick was no longer disabled as of April 2, 2019. (AR. 21.) Zoellick appealed, and after a hearing, an ALJ issued an unfavorable decision, finding Zoellick was not disabled as of April 1, 2019, because of medical improvement. (AR. 18–39.) The Appeals Council denied Zoellick's request for review, making the ALJ's decision the final decision of the Commissioner. (AR.

1–6.) Zoellick seeks judicial review of the decision under 42 U.S.C. § 405(g). For the following reasons, the Court reverses the ALJ's decision and remands the case for a reinstatement of benefits.

## I.   The ALJ's Eight-Step Process

The ALJ uses an eight-step evaluation process to determine whether a claimant continues to be disabled. At step one, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, the claimant is no longer disabled. *Id.* If not, the ALJ proceeds to step two of the evaluation. *Id.* § 404.1594(f)(2).

At step two, then ALJ determines if the claimant has an impairment or a combination of impairments that meet or medically equal the severity of an impairment enumerated in the regulations. *Id.* If so, the claimant is disabled. If not, the ALJ proceeds to step three, where he determines if there has been medical improvement shown by a decrease in medical severity. *Id.* If so, the ALJ proceeds to step four. *Id.* If not, the ALJ skips to step five. *Id.*

At step four, the ALJ determines if the medical improvement relates to the claimant's ability to do work such that it would increase the claimant's residual functioning capacity ("RFC"). *Id.* § 404.1594(f)(4). If so, the ALJ skips to step six. *Id.* If not, the ALJ proceeds to step five. *Id.*

At step five, the ALJ determines whether any exceptions to 20 C.F.R. §§ 404.1594(d) and (e) apply. *Id.* § 404.1594(f)(5). If no exceptions apply, the claimant is still disabled. *Id.* If an exception in § 404.1594(e) applies, the claimant is no longer disabled. *Id.* If an exception in § 404.1594(d) applies, the ALJ proceeds to step six. *Id.*

At step six, the ALJ determines whether the combination of all the claimant's impairments is severe. *Id.* If not, the claimant is no longer disabled. *Id.* If so, the ALJ moves to step seven, where he assesses the claimant's RFC and determines whether the plaintiff can perform past work. *Id.* § 404.1594(f)(7). If so, the claimant is no longer disabled. *Id.* If not, the ALJ moves to step eight. *Id.* § 404.1594(f)(8).

At step eight, the ALJ determines whether the claimant can perform any other work

in the national economy based on the claimant's RFC, age, education, and past work experience. *Id.* If so, the claimant is no longer disabled. *Id.* If not, the claimant remains disabled. *Id.*

## II. Legal Standard

This Court reviews only those issued raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). An ALJ's factual findings are "conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quotation and citation omitted). Substantial evidence is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quotations and citations omitted). "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). The substantial evidence standard is a "highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Still, this Court cannot affirm the ALJ's decision based on grounds on which the ALJ did not rely. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## III. Analysis

Zoellick raises three issues for the Court to consider: (1) whether the ALJ's finding of medical improvement was supported by substantial evidence; (2) whether the ALJ properly evaluated the opinion of state agency examining psychologist, Cynthia Ruzich, Ph.D.; and (3) whether the ALJ properly evaluated Zoellick's symptom testimony. The Court addresses each issue in turn.

### a. Medical Improvement

A recipient of disability benefits is no longer entitled to benefits if the Commissioner determines there is substantial evidence supporting a finding that "there has been a medical improvement in the individual's impairment or combination of impairments" that relates to the individual's ability to work, and "the individual is now able to engage in substantial

gainful activity[.]" 42 U.S.C. § 423(f)(1). To determine whether there has been medical improvement, the ALJ "must 'compare the current medical severity' of the claimant's impairment to the medical severity of the impairment 'at the time the most recent favorable medical decision that [the claimant] w[as] disabled or continued to be disabled.'" *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016) (quoting 20 C.F.R. § 404.1594(b)(7)). "[T]he relevant baseline normally is the medical evidence underlying the ALJ's most recent disability determination." *Id.* "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with your impairment[s]." 20 C.F.R. § 404.1594(b)(1).

Zoellick contests the ALJ's determination that he experienced medical improvement to a point that he would be able to engage in substantial gainful activity. (Doc. 13 at 11.) The appropriate analysis would necessarily include a comparison with the medical evidence underlying the February 2017 CPD. But here, the ALJ failed to discuss the evaluation and assessment provided by psychologist Alexander Patterson, Psy. D. The February 2017 CPD afforded "significant weight" to Dr. Patterson's evaluation and opinion, wherein Dr. Patterson opined that Zoellick could not have public interaction, would frequently require supervisors to check his work, would be off-task for at least ten percent of a workday, and could not maintain production-rated work. (AR. 163–64.) The ALJ committed legal error by failing to compare the medical evidence underlying the February 2017 CPD to the objective medical evidence available at the time of his decision.[1]

### b. Dr. Ruzich's Opinion

For claims filed before March 27, 2017, like Zoellick's, the ALJ must accord "controlling weight" to an examining doctor's opinion where the opinion is medically

---

[1] Though the failure to use the February 2017 CPD alone constitutes reversible error, it is worth noting that the ALJ also made false statements in his medical improvement analysis. The ALJ claimed that Zoellick "denies hallucinations and . . . does not have impaired judgment, concentration, or persistence." (AR. 25.) The ALJ offered no citation to the record supporting the statement, and in fact, it is demonstrably false. At his examination with Dr. Ruzich in March 2019, he reported "auditory and visual disturbances," including hearing voices that tell Zoellick "You aren't worth it" and seeing other people that aren't there. (AR. 2727.) He also reported distractibility; Dr. Ruzich noted Zoellick stating "Keeping focus is difficult." (*Id.*)

- 4 -

approved, supported by diagnostic techniques, and consistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2). Proper evaluation of an examining doctor's opinion requires that the ALJ set out "a detailed summary of the facts and conflicting clinical evidence," stating the ALJ's interpretation of the facts and evidence and making findings supporting the interpretation. *See Revels v. Berryhill*, 874 F.3d 648, 654–55 (9th Cir. 2017); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

The ALJ must provide clear and convincing reasons supported by substantial evidence to reject an uncontradicted treating or examining doctor's opinion. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). But the ALJ may reject a treating or examining doctor's opinion that is contradicted by another doctor if he provides "specific and legitimate" reasons for doing so that are supported by substantial evidence. 20 C.F.R. § 404.1527(c)(2); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Here, the ALJ assigned "partial weight" to Dr. Ruzich's opinion "based on its consistency with the medical evidence, including the findings and opinion of Dr. Patrick, regarding claimant's mental impairments and related limitations, to the extent it supports the RFC as established herein." (AR. 29.) The ALJ failed to provide specific and legitimate reasons to reject Dr. Ruzich's opinion. In fact, the ALJ made no specific findings, nor did he point to any evidence that would conflict with Dr. Ruzich's opinion, as required by the regulations. (*See* AR. 29.) Instead, he found that Dr. Ruzich's opinion was *consistent* with the medical evidence, so under the applicable regulations, the ALJ was required to afford the opinion *controlling* weight. The ALJ erred by improperly evaluating Dr. Ruzich's opinion.

  c. **Symptom Testimony**

Zoellick challenges the ALJ's rejection of his symptom testimony. Proper evaluation of a claimant's symptom testimony requires the ALJ to perform a two-step

- 5 -

analysis. *Garrison*, 759 F.3d at 1014. First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2017). If the claimant presents such evidence and absent evidence of malingering, the ALJ may reject the claimant's testimony as to the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.*; *Garrison*, 759 F.3d at 1015.

Here, Zoellick testified that he has daily auditory hallucinations. (AR. 95.) He often sleeps most of the day. (AR. 97.) He further testified that he perseverates on things that happened to him in the military, making it difficult to do anything else. (AR. 100.) Zoellick suffers significant short-term memory problems, and his parents, with whom he lives, remind him to take medications and go to the doctor. (AR. 69.) He has four to five panic attacks per week, and each attack lasts from ten to thirty minutes. (AR. 70–71.) These attacks leave him fatigued for the next one to two days. (AR. 71.)

The ALJ failed to provide legally sufficient reasons to reject Zoellick's symptom testimony. The ALJ contrasted Zoellick's symptom testimony with (1) the objective medical evidence, (2) Zoellick's daily activities, and (3) his treatment records. Though it is appropriate to consider these factors, the ALJ did not support his assessment with substantial evidence.

The ALJ includes a couple sentences in his analysis that could be interpreted as references to the objective medical evidence. The evidence on which he relies generally corroborates Zoellick's testimony, so it is unclear how the ALJ believes it should undermine Zoellick's credibility. For instance, the ALJ noted "October 2021 general checkup notes show claimant had normal mental status signs." (AR. 28.) But he cites to a treatment record that acknowledges Zoellick's mental health disorders and otherwise provides a review of systems and vital signs, neither of which indicate "normal mental status." (*See* AR. 2899.) And even if the objective medical evidence didn't fully corroborate Zoellick's testimony, that fact, "in and of itself, is not a clear and convincing

reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

As for Zoellick's treatment, the ALJ's analysis is brief and unsupported by any evidence. He conclusively states that "recent evidence focused on sleep studies and indicated no auditory or visual hallucinations were present," but the statement is unaccompanied by any citation to the record. (AR. 28.) In fact, there is a great deal of evidence that Zoellick's auditory and visual hallucinations persisted through recent years. (*See, e.g.*, AR. 2716, 2727, 2732–2733.) The ALJ also recites Zoellick's report that "medications help somewhat but cause drowsiness." (AR. 28.) Again, the ALJ offers no citation to the record, but more importantly, he provides no explanation as to how this fact would undermine Zoellick's credibility.

But even if the ALJ had offered some evidence of improvement with treatment, the law recognizes that claimants frequently experience cycles of improvement during treatment for mental health disorders, and thus, "it is error to reject a claimant's testimony because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017; *accord Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (holding that a treating doctor's "statements must be read in the context of the overall diagnostic picture he draws"). Zoellick never "return[ed] to a level of function close to the level of function [he] had before [he] developed symptoms or signs" of his impairments, so some improvement is not a clear and convincing reason to reject his testimony. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

The ALJ similarly failed to provide clear and convincing reasons supported by substantial evidence to reject Zoellick's testimony based on Zoellick's level of daily activity. The ALJ simply lists Zoellick's activities, including occasionally viewing online repair tutorials, walking his dog, doing work around the house, occasionally doing his laundry, cleaning his room, managing his personal hygiene, using a tablet to watch movies, and using a cell phone. (AR. 28.) The ALJ also noted that Zoellick traveled to Seattle from Phoenix alone for medical treatment, where he would stay with a friend and get rides to his appointments. (*Id.*)

Particularly where, as here, the claimant's disabling impairments are mental, rather than physical, it is critical that the ALJ explain *how* the claimant's daily activities impact his or her credibility. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). The fact that Zoellick walks his dog, watches movies, or checks his email on occasion does not apparently contradict his allegations of hallucinations and impaired judgment, concentration, and persistence. Moreover, the ALJ did not provide any citation to the record indicating that Zoellick spent a substantial part of his day engaged in any of these activities or any explanation of their transferability to a workplace. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (holding that daily activities may be grounds for adverse credibility finding if claimant is able to spend a substantial part of his day engaged in activities involving the performance of functions transferable to work setting).

The ALJ did not provide any clear and convincing reasons supported by substantial evidence to reject Zoellick's symptom testimony. His decision to discount the testimony was thus error.

**IV.    Conclusion**

Zoellick requests that the Court remand for a reinstatement of benefits, rather than remanding for further proceedings. (Doc. 13 at 25.) Generally, "[i]f additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). But the Court may, in its discretion, remand for a calculation of benefits when "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

This case presents the rare circumstances that justify a remand for a reinstatement

of benefits. First, the record has been fully developed; Zoellick's complaints are corroborated by extensive treatment records. In fact, there was already an adjudication of disability previously. Second, the ALJ did not provide legally sufficient reasons to find medical improvement, to reject Dr. Ruzich's opinion, or to reject Zoellick's symptom testimony. If the discredited evidence were credited as true, Zoellick would be considered disabled because the vocational expert testified that, with the kind of limitations assessed by Dr. Ruzich, Zoellick would be precluded from all work. (AR. 82–84.) Moreover, crediting Dr. Ruzich's opinion would show that there has not been medical improvement since the February 2017 CPD, when Zoellick was last adjudicated disabled. The Court will therefore reverse ALJ's decision and remand for a reinstatement of benefits.

**IT IS ORDERED** that the ALJ's decision (AR. 18–39) is **REVERSED** and **REMANDED** for a calculation of benefits.

Dated this 31st day of March, 2025.

Douglas L. Rayes
Senior United States District Judge